# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

FLOYD HARLEY,

      *Plaintiff,*

    v.

CITY OF NEW JERSEY CITY, *et al.*,

      *Defendants.*

Civil Action No. 16-5135

**OPINION**

**John Michael Vazquez, U.S.D.J.**

The present matter comes before the Court on Defendants'[1] motion to dismiss the Complaint for failure to state a claim. Plaintiff opposes the motion.[2] This case concerns allegations of a deprivation of Plaintiff's constitutional rights, racial discrimination, defamation, and conspiracy in connection with the release of a document containing, as it pertains to Plaintiff, a racial slur. This motion was decided without oral argument pursuant to Federal Rule of Civil

---

[1] The entity defendants include City of Jersey City, Jersey City's Department of Public Safety, the Jersey City Police Department, and Jersey City's Office of Equal Opportunity (collectively, the "Entity Defendants"). The individual defendants include Stephen Fulop, James Shea, Terrence Crowley, Jeana Albuan, and Amanda Kahn (the "Individual Defendants," and with the Entity Defendants, "Defendants").

[2] Defendants' brief in support of their motion to dismiss the Complaint will be referred to hereinafter as "Def. Br." (D.E. 10); Plaintiff's opposition to Defendants' motion to dismiss will be referred to "Pl. Opp'n" (D.E. 14); and Defendants' reply brief will be referred to "Def. R.Br." (D.E. 15).

Procedure 78 and Local Civil Rule 78.1. The Court has considered the parties' submissions and grants Defendants' motion.

## I.  INTRODUCTION

In 2010, Plaintiff was involved in a motor vehicle accident in Jersey City (or the "City"). As a result, a Jersey City Police Department ("JCPD") accident report (the "Report") was created. The Report contained vulgar and derogatory terms, including referring to Plaintiff with a contemptible racial slur. Plaintiff is, and was at the time of the accident, a messenger for the City. The Report also attributed vulgar and derogatory language to a police officer involved in the accident. The Report, moreover, contained profanity and a pejorative description of the lead investigator. As far as the Court can determine, the Report maligned at least four persons: Plaintiff, the officer involved in the accident, a woman driver also involved in the accident, and the lead investigator of the accident. The officer whose name appears as the author of the Report strenuously denied any involvement in drafting the inappropriate language, noting that the signature was not his and that a variety of persons had access to the computer from which the Report was generated.

In 2014, the officer involved in the crash filed a grievance over the contents of the Report. As a result, EEO launched a confidential investigation and interviewed several persons, including Plaintiff. The City also submitted the report to outside law enforcement agencies, hoping to find forensic evidence that would reveal the culprit. The Report, however, was also published on a non-city website. How the Report fell into the hands of the person or entity who posted it online is not clear, although Plaintiff claims that it was disclosed in response to an Open Public Records Act ("OPRA") request.

Plaintiff thereafter instituted the current action against the officer whose name appears on the report, Jersey City, the City's Department of Public Safety and its police department, Jersey City's Office of Equal Opportunity ("EEO"), the mayor, the public safety director, and two representatives of EEO. Plaintiff's Complaint contains numerous deficiencies. Plaintiff conflates the words derogatory, discriminatory, and defamatory, seemingly using them in an interchangeable (and not entirely consistent) fashion. Plaintiff also mistakes proper policy as proof of some nefarious intent. Plaintiff further makes arguments that are inherently contradictory. For example, on the one hand, Plaintiff argues against the EEO confidential investigation while, on the other, he claims that Defendants failed to take corrective and remedial action when they learned of the Report.

Plaintiff has every right to be concerned (indeed, outraged) that the Report was generated in the first place and then later posted on the internet. However, as pled, Plaintiff's Complaint must be dismissed for a myriad of reasons.

## II. BACKGROUND[3]

Plaintiff is employed by Jersey City as a messenger. Compl. ¶ 20. Plaintiff alleges that on May 27, 2010, while he was working, he was riding in a car driven by JCPD Officer Michael Maietti. They were involved in an automobile accident with another car being driven by a female. *Id.* ¶ 24. After the accident, the Report, formally called a Crash Investigation Report, was

---

[3] The following facts are derived from Plaintiff's Complaint ("Compl.") and the exhibits attached to the Complaint. D.E. 1. When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The Court can also consider "the factual allegations contained in other documents, such as documents referred to in the complaint and matters of public record if the claims in the complaint are based upon those documents." *In re Milestone Sci. Sec. Litig.*, 103 F. Supp. 2d 425, 450 (D.N.J. 2000). While Defendants contest many of Plaintiff's factual allegations, they accept as true the alleged facts for the purposes of this Motion. Def. Br. at 3.

generated. *Id.* ¶ 25. Defendant Sergeant Terrence Crowley is indicated as the author of the Report. The allegedly racially offensive and gender-based discriminatory language in the Report is the basis for this lawsuit. *Id.* ¶ 27.

The "Conclusion and Recommendation" Section of the Report states as follows:

> The primary cause of the accident was the inattention of P.O. Maietti eating a sandwich while driving n\*\*\*\*\* Floyd around the city. Officer Maietti stated "the f\*\*\*\*\* dumb b\*\*\*\* just stopped and I hit the c\*\*\*!" P. O. Maietti should be credited for saving the female[']s life, because his boy Floyd wanted "to put a cap in her a\*\*!" The ultimate Buffoon arrived on the scene as the accident investigator and totally f\*\*\*\*\* that up, so I couldn't tell you who the f\*\*\* is at fault.

Compl. Ex. B. Plaintiff alleges that on or about June 3, 2010, Crowley gave Maietti the Report. *Id.* ¶ 26. Subsequently, Maietti gave the Report to his commanding officer, Captain Joseph Ascolese. *Id.* ¶ 28. Crowley then issued a memorandum in which he claimed that the Report was a fake, that the signature on the Report was not his, that he authored a legitimate (and non-controversial) report, and that his report and the Report were generated from an "unsecured" office computer. *Id.* ¶ 30. On December 30, 2014, over four years later, Maietti lodged a formal grievance against Crowley with EEO regarding the Report. *Id.* ¶ 33. After the Report was created, but prior to Plaintiff's knowledge of it, the EEO/Affirmative Action Liaison Officer ("EEO/AA Officer"), Jenna Abuan, began an investigation. *Id.* ¶ 34. The investigation was "handled on a confidential basis." *Id.*

Plaintiff alleges that during the investigation, Defendants released the Report to other law enforcement agencies. *Id.* ¶ 41. Specifically, in furtherance of the investigation, Defendants sent the Report for laboratory testing and handwriting analysis. *Id.* ¶ 40. Additionally, Plaintiff asserts that the Report was released pursuant to OPRA to private citizens and an internet blogger. *Id.* ¶¶

41-42. On March 24, 2016, Plaintiff became aware of the Report when it was published on the website realjerseycity.com. *Id.* ¶ 43.

Following the public release of the Report, Plaintiff alleges that he "received (and continues to receive) comments and questions from family members, friends, co-workers, acquaintances and others regarding the defamatory and racially discriminatory report." *Id.* ¶ 44. Other than the contents of the Report, Plaintiff does not allege that he has been subject to any additional derogatory or discriminatory comments or actions. There is also no indication that Plaintiff's job position has changed in any manner since the accident or since the public posting of the Report. Nonetheless, Plaintiff alleges that he has "continued to work in a hostile work environment." *Id.* ¶ 46.

## III. PROCEDURAL HISTORY

Plaintiff filed his Complaint on August 22, 2016 alleging eight causes of action: (1) Hostile Work Environment Violation, 42 U.S.C. § 1981; (2) Fourteenth Amendment Violation, 42 U.S.C. § 1983; (3) *Monell* Liability (Fourteenth Amendment), 42 U.S.C. § 1983; (4) Conspiracy to Interfere with Civil Rights, 42 U.S.C. §§ 1985, 1986; (5) New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6-2, et seq.; (6) New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5.1, et seq.; (7) Common Law Defamation; and (8) Civil Conspiracy.[4] In lieu of answering, Defendants filed their motion to dismiss on October 12, 2016. Def. Br. Plaintiff opposes this motion. Pl. Opp'n.

## IV. STANDARD OF REVIEW

---

[4] Counts I and II are brought against the Individual Defendants only; Count III is against the Entity Defendants only; and the remainder of the Counts (IV-VIII) are against all Defendants.

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols., LLC*, No. 10-2945, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

## V. DISCUSSION

Before addressing the specific counts, the Court notes at the outset that Plaintiff appears to confuse or conflate the contents of the Report in general with the specific, inappropriate statements

that relate to him. The Report uses a racial slur in referring to Plaintiff, attributes to him a particular comment (slang language to describe a potential shooting), and refers to Plaintiff as Officer Maietti's "boy." The remaining, objectionable comments concern Officer Maietti, the female driver of the other car, and the accident investigator – not Plaintiff. Plaintiff also misconstrues wholly appropriate conduct, a confidential investigation into the Report and attempts to forensically determine who actually authored the document, with some type of improper action. To the contrary, the Entity Defendants could be accused of malfeasance if they did not investigate the source of the Report upon learning of it.

Hostile Work Environment under Section 1981 (Count One)

Plaintiff's first count alleges a hostile work environment against the Individual Defendants pursuant to 42 U.S.C. § 1981. Compl. ¶¶ 48-60. Defendants argue that Section 1981 does not create a private cause of action and therefore should be dismissed. Def. Br. at 24-26. Additionally, Defendants contend that even if there were a valid cause of action under Section 1981, Plaintiff's Complaint fails to plausibly plead a hostile work environment claim. *Id.* at 26-28. Plaintiff responds by arguing that his Section 1981 violations "are subsumed within the [d]ue [p]rocess and [e]qual [p]rotection [c]ounts." Pl. Opp'n at 30. Plaintiff also argues that he has sufficiently pled each element for a hostile work environment claim. *Id.* at 30-32.

At the outset, Plaintiff provides no support to demonstrate that Section 1981 creates a private cause of action, and the Court has found none. Since "no implied private right of action exists against state actors under 42 U.S.C. § 1981," Plaintiff is required to plead his claim pursuant to Section 1983. *McGovern v. City of Phila.*, 554 F.3d 114, 122 (3d Cir. 2009); *see also Morris v. United States*, No. 12-2926, 2014 WL 1272104, at *6 (D.N.J. Mar. 27, 2014) (finding that "[S]ection 1983 . . . provides the remedy for violations of [S]ection 1981 by state actors.") (citing

*McGovern*, 554 F.3d at 117). Thus, Count I is dismissed because Plaintiff cannot proceed pursuant to Section 1981.

Moreover, even assuming that Counts II and III are "subsumed" in Plaintiff's Section 1981 (which would have to be brought pursuant to Section 1983) claim, as Plaintiff argues, he nonetheless fails to state a claim for a hostile work environment. To establish a *prima facie* claim for a hostile work environment under Section 1981,[5] a plaintiff must show that:

---

[5] Section 1981(a) provides in pertinent part that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

The elements of a hostile work environment are the same under Section 1981 as they are under Title VII. *See Griffin v. Harrisburg Prop. Servs., Inc.*, 421 F. App'x 204, 207 n.3 (3d Cir. 2011). Nonetheless, there are some differences between actions brought pursuant to Section 1983 and those brought under Title VII. For instance, Section 1983 only applies to state actors, while Title VII applies to both private and public employers. *See Johnson v. Transportation Agency, Santa Clara Cty., Cal.,* 480 U.S. 616, 628 (1987) ("Congress expressly indicated the intent that [] Title VII principles be applied to governmental and private employers alike."); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995) (finding that liability under Section 1983 is limited to state actors or those acting under the color of law). Since Section 1983 applies to a person acting "under the color of law," it applies to individuals as well as entities, whereas Title VII does not apply to individuals. *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 247 (2009) ("§ 1983 equal protection claims may be brought against individuals as well as state entities."); *Dici v. Com. of Pa.*, 91 F.3d 542, 552 (3d Cir. 1996) ("[I]ndividual employees cannot be held liable under Title VII."). Additionally, a Section 1983 action requires intentional discrimination, *see Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 274 (1979), while a Title VII claim can be brought pursuant to a theory of intentional discrimination *or* disparate impact. *See Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 1002 (1988) (discussing two theories of Title VII liability and noting that a disparate impact theory focuses on the effect of the employment practice rather than an employer's intent).

Despite these distinctions, among others, as relevant to this case "[t]he elements of a racially hostile work environment are the same under Title VII and § 1981." *Griffin*, 421 F. App'x

> (1) he suffered intentional discrimination because of his membership in a protected class; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected [Plaintiff]; (4) the discrimination would detrimentally affect a reasonable person of the same protected class in that position; and (5) the existence of respondeat superior liability.

*Verdin v. Weeks Marine Inc.*, 124 F. App'x 92, 95 (3d Cir. 2005) (citing *Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293 (3d Cir. 1999)). To determine whether harassment is sufficiently "pervasive and regular," courts invoke a "totality of the circumstances" analysis and consider the following factors: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). In other words, "to be actionable, 'the harassment must be so severe or pervasive that it alters the conditions of the victim's employment and creates an abusive environment.'" *Grassmyer v. Shred-It USA, Inc.*, 392 F. App'x 18, 30 (3d Cir. 2010) (quoting *Weston v. Pennsylvania*, 251 F.3d 420, 425-26 (3d Cir. 2000)).

"The *sine qua non* of a hostile work environment claim is a workplace ... permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Fitzgerald v. Shore Mem'l Hosp.*, 92 F. Supp. 3d 214, 240 (D.N.J. 2015) (internal quotations marks and citation omitted). "Isolated incidents generally will not suffice to establish a hostile work environment unless they are extraordinarily severe." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 547 (2d Cir. 2010); *Greer v. Mondelez Glob., Inc.*, 590 F. App'x 170, 173 (3d Cir. 2014) ("Simple

---

at 207. Therefore, the Court will rely on both Section 1981 (brought through Section 1983) and Title VII cases in its analysis.

teasing, offhand comments, and isolated incidents do not amount to discriminatory changes in the terms and conditions of employment.") (internal quotation marks omitted). Thus, severe or pervasive harassment is distinguished from the "mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee." *Nuness v. Simon & Schuster, Inc.*, 221 F.Supp.3d 596, 601 (D.N.J. 2016) (internal quotation marks omitted).

Here, Plaintiff alleges that he was informed of the Report on March 24, 2016, nearly six years after it was reportedly written. Compl. ¶ 43. Up to that point, Plaintiff was not aware of the Report or its contents. Plaintiff goes on to state that "[t]he defamatory and racially discriminatory Crash Review Evaluation report [] is so severe and pervasive that a reasonable person in plaintiff Harley's position would find his work environment to be hostile and abusive." *Id.* ¶ 55. He further alleges that "[f]rom March 2, 2016 to the present, Plaintiff Harley continues to work in a hostile work environment." *Id.* ¶ 45.

Thus, Plaintiff's only non-conclusory allegation of a hostile work environment is the Report. That, on its own, is not sufficient to show that the alleged harassment was so "severe and pervasive" as to "alter the conditions of [Plaintiff's] employment . . ." *Harris*, 510 U.S. at 21. Pursuant to the Complaint, it appears this was an isolated incident rather than a continuing issue of harassment. *See Exantus v. Harbor Bar & Brasserie Rest.*, 386 Fed. Appx. 352, 354 (3d Cir. 2010) (finding that defendant's use of the epithet "Haitian F***" several times was "indeed unpalatable and inappropriate," but was not "severe or pervasive"); *Woodard v. PHB Die Casting*, 255 F. App'x 608, 610 (3d Cir. 2007) (finding that a single incident of "KKK-related graffiti" and the allegation that it was not promptly removed, was insufficient at the summary judgment stage "for a trier of fact to conclude that discriminatory conduct in the workplace amounted to a change in the terms or conditions of [plaintiff's] employment."); *Lawrence v. F.C. Kerbeck & Sons*, 134

F. App'x 570, 572 (3d Cir. 2005) (holding that while defendant's racial remark was "disrespectful and inexcusable," Plaintiff could not show a hostile work environment "based on this one isolated incident"). Moreover, it appears that Plaintiff alleges that the publication of the Report was done by a private citizen rather than by any of the named Defendants. Plaintiff does not plausibly allege that any of the Defendants intentionally caused the Report to be published online.

Moreover, Plaintiff was not even aware of the Report for nearly six years, and there is no allegation that Plaintiff suffered from a hostile work environment in the intervening time period. Once Officer Maietti filed a complaint concerning the Report, EEO investigated the matter. Since the investigation began and since Plaintiff became aware of the Report, Plaintiff's only allegation of harassment or hostility at work is the conclusory statement that he "continues to work in a hostile work environment." Compl. ¶ 45. Plaintiff, however, pleads no facts to support this conclusion. For example, while Plaintiff alleges that others have contacted him since the Report was published online, he does not indicate that such contacts have been hostile, offensive, or racially insensitive. In addition, Plaintiff claims that persons who have contacted him concerning the Report include family, friends, and acquaintances; Plaintiff has not alleged that these persons are part of his working environment. Plaintiff's allegations are not sufficient to plausibly plead a claim for a hostile work environment. Count I is dismissed without prejudice.

Hostile Work Environment pursuant to the NJLAD (Count VI)

In Count VI, Plaintiff brings an NJLAD clam against all Defendants, alleging that Defendants are liable "for workplace harassment by way of invidious racial discrimination that created a hostile work environment for Plaintiff." Compl. ¶ 111. Plaintiff also alleges that "the circulation and publication of the Crash Review Evaluation report alters the conditions of [his] employment and makes his working environment [] hostile or abusive." Id. ¶ 115.

Defendants argue that Plaintiff has not adequately pled his NJLAD claim against Jersey City[6] because he has not "pled any facts to support a hostile work environment claim, or any specific discrimination in the workplace." Def. Br. at 30. Defendants also argue that the Individual Defendants cannot be liable since there can be no "aiding and abetting" liability when the claims against the employer fail. Def. Br. at 30-33. Additionally, Defendants contend that aiding and abetting liability requires "active and purposeful conduct," which Plaintiff has failed to allege. *Id*. Plaintiff responds by reiterating his arguments: that the creation, publication, and "cover-up" of the Report created an ongoing and pervasively hostile work environment. Pl. Opp'n at 34-35.

The NJLAD prohibits unlawful employment practices and discrimination by an employer. *O'Toole v. Tofutti Brands, Inc.*, 203 F. Supp. 3d 458, 467 (D.N.J. 2016). "New Jersey courts treat hostile work environment claims under the NJLAD the same as the Supreme Court treats hostile work environment actions under Title VII." *Sgro v. Bloomberg L.P.*, 331 F. App'x 932, 941 (3d Cir. 2009). *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001) (holding that the elements of a hostile work environment claim under NJLAD "closely resemble the first four elements of [a] Title VII hostile work environment claim"). Moreover, as discussed in note 5, *supra*, hostile work environment claims under Title VII and Section 1981 are reviewed in the same manner. *See Verdin*, 124 F. App'x at 96 ("[C]ourts utilize the same analysis for the merits of Title VII and Section 1981 claims.").

---

[6] Defendants also argue that Plaintiff's NJLAD claims must be dismissed as against the EEO and the JCPD, since they are not Plaintiff's employer. Def. Br. at 29 n.5. The Court agrees. "'[T]he lack of an employment relationship between the plaintiff and the defendant will preclude liability [under the NJLAD].'" *Norris v. Securitas Sec. Servs. USA, Inc.*, No. 10-06809, 2011 WL 3206484, at *3 (D.N.J. July 27, 2011) (quoting *Thomas v. Cty. of Camden*, 366 N.J. Super. 582, 594 (App. Div. 2006)). Since Plaintiff only alleges that he was employed by the City, Count VI is dismissed as to the remaining Entity Defendants. *See* Compl. ¶¶ 19-20.

As discussed in the context of Plaintiff's Section 1981 claim, Plaintiff does not adequately plead a hostile work environment. *Fitzgerald*, 92 F. Supp. 3d at 240. Accordingly, for the same reasons, Plaintiff's NJLAD claim for hostile work environment is dismissed as to Jersey City. *See Sanchez v. SunGard Availability Servs. LP*, 362 F. App'x 283, 286 (3d Cir. 2010) (dismissing NJLAD claim for the same reasons as dismissed Title VII claim).

In addition, the LAD, through N.J.S.A. 10:5–12(a), prohibits unlawful employment practices and discrimination by an *employer*. *Tarr v. Ciasulli*, 181 N.J. 70, 83 (N.J. 2004). "[I]ndividual liability of a supervisor for acts of discrimination or for creating or maintaining a hostile environment can only arise through the aiding and abetting mechanism." *Cicchetti v. Morris Cty. Sheriff's Office*, 194 N.J. 563, 594 (N.J. 2008). However, "[t]he NJLAD does not provide for individual liability for aiding and abetting if the employer is not found liable." *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 856 (3d Cir. 2016).

N.J.S.A. 10:5-12(e) governs aiding and abetting liability, which dictates that it is unlawful "for any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so." *See Norris v. Securitas Sec. Servs. USA, Inc.*, No. 10-06809, 2011 WL 3206484, at *3 (D.N.J. July 27, 2011) (citing *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 126 (3d Cir. 1999)). New Jersey courts have broadly interpreted persons subject to aiding and abetting liability. *See, e.g.*, *O'Toole*, 203 F. Supp. 3d 458, 467 (D.N.J. 2016) ("[C]ourts construe the aiding and abetting theory broadly, such that an individual supervisor can aid and abet his own conduct."); *DeSantis v. N.J. Transit*, 103 F. Supp.3d 583, 591 (D.N.J. 2015) ("New Jersey courts have held that an individual can aid and abet, not only the conduct of another person, but that person's own conduct."); *Mann v. Estate of Meyers*, 61 F. Supp. 3d 508, 529-30 (D.N.J. 2014) (concluding that supervisor was a proper party under the

NJLAD because "an individual can be held liable under the aiding and abetting provision even where the individual performed the acts of discrimination himself").[7] Nonetheless, "an individual employee can only be found liable of aiding and abetting if actively involved in the discriminatory conduct." *Feraro-Bengle v. Randstad N. Am., L.P.*, No. 03-1650, 2006 WL 2524170, at *12 (D.N.J. Aug. 30, 2006) (internal quotation marks omitted); *Failla v. City of Passaic*, 146 F.3d 149, 158 (3d Cir. 1998) (finding that an "employee aids and abets a violation of the [NJ]LAD when he knowingly gives substantial assistance or encouragement to the unlawful conduct of his employer").

Here, Plaintiff alleges that the Individual Defendants aided and abetted discriminatory employment practices when they "prepared, disseminated, covered up, circulated, released and caused to be published the defamatory and racially discriminatory [Report]." Compl. ¶ 122. These claims are conclusory and lack plausible factual support. Moreover, since the Court finds that the Complaint does not set forth plausible allegations as to the employer, the City, the aiding and abetting argument also fails as to the Individual Defendants. *Tourtellotte*, 636 F. App'x at 856. Therefore, this Count is dismissed as to each of the Individual Defendants.

Section 1983 - Fourteenth Amendment (Counts II & III)

Counts II and III raise violations of the Fourteenth Amendment pursuant to Section 1983: Count II against the Individual Defendants and Count III against the Entity Defendants. Compl. ¶¶ 61-90. Defendants argue that these counts suffer from multiple deficiencies. First, as to Count III, Defendants argue that Plaintiff fails to allege that the Entity Defendants adopted a policy or custom that caused Plaintiff's injuries. Def. Br. at 5-7. Additionally, Defendants argue that Count

---

[7] *But see Amentler v. 69 Main St., LLC*, No. 08-351, 2012 WL 28194, at *13 (D.N.J. Jan. 3, 2012) ("A party [under the NJLAD] cannot aid and abet its own unlawful conduct.").

II must be dismissed because "Plaintiff has not made a single non-conclusory factual assertion that a specific action by any of the Individual Defendants led to the alleged constitutional deprivation." *Id.* at 7. This includes allegations of supervisory liability; which Defendants allege Plaintiff has not plausibly pled. *Id.* at 7-10. Also, as to Count II, Defendants argue that the Individual Defendants are entitled to the protection of qualified immunity. *Id.* at 10-11. With respect to Counts II and III, Defendants further argue that Plaintiff fails to plausibly plead either an equal protection or a due process claim. *Id.* at 11-17.

    1) *Monell* Liability (Count III)

    "A local government may be sued under § 1983 only for acts implementing an official policy, practice or custom." *Losch v. Borough of Parkesburg, Pa.*, 736 F.2d 903, 910 (3d Cir. 1984); *Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007) (observing that a plaintiff can establish municipal liability under Section 1983 through either an official policy or custom). "This type of municipal liability claim is generally referred to as a *Monell* claim, based on *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978)." *Jutrowski v. Twp. of Riverdale*, No. 13-7351, 2017 WL 1395484, at *6 (D.N.J. Apr. 17, 2017). The *Monell* Doctrine provides "that liability may not be proven under the respondeat superior doctrine, but must be founded upon evidence that the government unit itself supported a violation of constitutional rights." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). Thus, "municipal liability attaches only when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* (internal quotation marks omitted).

    A plaintiff shows that an official policy existed "when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation,

policy, or edict." *Id.* (quoting *Bielevicz*, 915 F.2d at 850). On the other hand, custom is established by "showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* at 156. Ultimately, to plausibly plead *Monell* liability, "[a] plaintiff must identify the challenged policy, attribute it to the [municipality] itself, and show a causal link between execution of the policy and the injury suffered." *Kranson v. Valley Crest Nursing Home*, 755 F.2d 46, 51 (3d Cir. 1985) (internal citation and quotation marks omitted).

In Count III, Plaintiff brings a Fourteenth Amendment claim against three municipal Defendants: Jersey City, the EEO, and the JCPD.[8] Compl. ¶¶ 79-90. Because the City is a municipality, this Count is subject to the *Monell* Doctrine.

Plaintiff fails to plausibly plead *Monell* liability. Plaintiff's Complaint is replete with conclusory statements of "policies" and "customs." *See* Compl. ¶¶ 80-85. For example, Plaintiff alleges that the Entity Defendants "had in effect policies, procedures, customers and practices that permitted, condoned and fostered the unconstitutional conduct of the individual defendants." *Id.* ¶ 80. Plaintiff continues that the Entity Defendants "failed to supervise and train its Police and [] officers," and that they "had a general policy, pattern and/or practice of not disciplining Police and [] officers/supervisors/employees." *Id.* ¶ 86. Further, Plaintiff alleges that the Entity Defendants "deliberately overlooked and covered up individual employee misconduct." *Id.* However, the Complaint sets forth no plausible facts suggesting improper training, failure to supervise, or failure

---

[8] Arms of municipalities and the municipality itself are treated as a single entity for the purposes of Section 1983 liability. *See Hernandez v. Borough of Palisades Park Police Dep't*, 58 F. App'x 909, 912 (3d Cir. 2003) ("Police departments cannot be sued alongside municipalities because a police department is merely an administrative arm of the municipality itself."). However, since Defendants do not raise this argument, the Court will not raise it *sua sponte*.

to address employee misconduct. Instead, the basis for each of Plaintiff's allegations is solely the Report.

Plaintiff argues that the investigation of the Report should result in Defendants' liability. Pl. Opp'n at 2-4. However, Plaintiff does not specifically describe an official policy that violates the law, nor does he allege a proper causal link between any policy of Defendants and the alleged harm. *See Kranson*, 755 F.2d at 51. There are no facts that demonstrate that the investigation into the Report was handled in a discriminatory manner.[9] In fact, the opposite appears true: Plaintiff alleges that EEO undertook a full, confidential investigation of the Report, including forensic testing.[10]

---

[9] Throughout Plaintiff's opposition brief, he appears to misunderstand the "policy" inquiry under the *Monell* Doctrine. Plaintiff relies on three Jersey City policies: (1) a non-discrimination policy; (2) a policy requiring police officers to create crash evaluation reports; and (3) investigation policies. Pl. Opp'n at 3-6. *Monell* referred to policies that, by their nature, lead to a constitutional tort. *Monell*, 436 U.S. at 691. The policies cited by Plaintiff could be followed without any constitutional violation. Indeed, the non-discrimination policy is designed to avoid discrimination, not countenance it. Further, there is no indication that these facially neutral policies were implemented in a discriminatory manner. There is also no indication that the policies were subject to some unwritten custom that would cause them to result in a constitutional tort.

Plaintiff continues that because the Report was generated on JCPD premises, it can be reasonably inferred that it was not an isolated instance, but rather a formal policy. Pl. Opp'n at 12. This is not a reasonable inference. Regardless of the amount of training provided or the number of policies implemented, a rogue employee can always type something inappropriate on an employer's computer. If this occurs, it does not mean (nor can it be inferred) that the employer has a formal policy condoning such behavior. Similarly, Plaintiff argues that Defendants failed to train their subordinates by permitting "unfettered, unchecked and unsecured access to JCPD computers and equipment." *Id.* at 13. First, it appears that Plaintiff actually alleged that a certain number of persons, rather than all JCPD subordinates, had access to the computer from which the Report was generated. Second, and more importantly, access to a computer does not lead to a logical inference that JCPD encouraged or countenanced any person to use the computer improperly.

[10] Plaintiff later contradicts these allegations in his brief and states that "EEO investigations turn a blind eye to genuine racial discrimination within the Report and pay lip service to the City's anti-discrimination policy." Pl. Opp'n at 12. Plaintiff provides no plausible allegations to support this

Lastly, Plaintiff argues that the Report, "in and of itself" violates his Fourteenth Amendment rights "against racial discrimination." Pl. Opp'n at 2. Essentially, Plaintiff appears to be arguing that the Report itself established that the Entity Defendants maintained a forbidden policy or custom. However, more than a single instance of discrimination is necessary to establish *Monell* liability. *See Brown v. City of Pittsburgh*, 586 F.3d 263, 292 (3d Cir. 2009) ("[P]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing . . . municipal policy, which policy can be attributed to a municipal policymaker."). More importantly, the Report itself does provide sufficient proof of an unconstitutional policy or custom by the Entity Defendants. Indeed, the actual policies cited to by Plaintiff are either neutral or expressly designed to combat discrimination. Thus, Plaintiff fails to plausibly plead a *Monell* claim and Count III is dismissed without prejudice.

2) Individual Defendants' Liability (Count II)

"Under Section 1983, a plaintiff must plead a deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." *Phillips*, 515 F.3d at 235. Here, Plaintiff brings a Section 1983 claim, alleging that the Individual Defendants violated Plaintiff's constitutional rights, including denying him equal protection under the law, discriminating against him because of his race, and depriving him of "life, liberty and property without notice and opportunity to be heard." Compl. ¶¶ 61-78. Analysis of a Section 1983 claim begins by identifying the "exact contours of the underlying right said to have been violated" and then determining "whether the plaintiff has alleged a deprivation of a constitutional

---

allegation. To the contrary, Plaintiff's other allegations indicate that EEO acted extensively and swiftly (even prior to Plaintiff's knowledge of the Report) in investigating the Report.

right at all." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 579 (3d Cir. 2004). Thus, the Court will first analyze whether Plaintiff has stated a claim for a violation of equal protection or due process.[11]

As to Plaintiff's equal protection claim,[12] Plaintiff alleges that "Defendants violated the provisions of 42 U.S.C. § 1983 by denying Plaintiff [] the equal protection of the laws in violation of the Fourteenth Amendment." Compl. ¶ 76; *see also id.* ¶ 76 ("The [I]ndividual [D]efendants acted under color of law to deny Plaintiff Floyd Harley equal protection of the laws and discriminated against him on the basis of his race in violation of 42 U.S.C § 1983"). Plaintiff provides no factual allegations to support his equal protection argument other than those on which he premised his hostile work environment claim in Count I. As discussed, Plaintiff fails to

---

[11] Defendants also argue that Plaintiff cannot maintain a Section 1983 action against the Individual Defendants because *Iqbal* changed the theory of supervisory liability under Section 1983. Def. Br. at 8-9. Defendants argue that following *Iqbal*, the Third Circuit has at least narrowed, if not eliminated, supervisory liability under Section 1983. *Id.* The Third Circuit has yet to conclusively determine the reach of *Iqbal* and whether "supervisory liability" is no longer applicable to Section 1983 actions. *See Jankowski v. Lellock*, 649 F. App'x 184, 187 (3d Cir. 2016) ("[W]e have refrained from answering the question of whether *Iqbal* eliminated—or at least narrowed the scope of—supervisory liability because it was ultimately unnecessary to do so in order to dispose of the appeal then before us."); *Bistrian v. Levi*, 696 F.3d 352, 366 n.5 (3d Cir. 2012).
    Nonetheless, even under the pre-*Iqbal* standard, "personal involvement by a defendant remains the touchstone for establishing liability for the violation of a plaintiff's constitutional right." *Williams v. Lackawanna Cty. Prison*, No. 07-1137, 2010 WL 1491132, at *5 (M.D. Pa. Apr. 13, 2010). Since the Complaint does not plausibly allege personal involvement concerning any constitutional violation as to anyone except Crowley, it is not plausibly pled as to the remaining Individual Defendants. *See Argueta v. U.S. Immigration & Customs Enf't*, 643 F.3d 60, 71 (3d Cir. 2011) (holding that in Section 1983 actions, a plaintiff must "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). Since Plaintiff alleges that Crowley wrote the Report (or at least his signature was on the Report), the Court will address the equal protection and due process claims as to him.

[12] To state a claim for an equal protection violation, a plaintiff must allege that "(1) []he is a member of a protected class; (2) that []he was treated differently from similarly situated individuals; and (3) that this disparate treatment was based on [his] membership in the protected class." *Knox v. Union Twp. Bd. of Educ.*, No. 13-5875, 2015 WL 769930, at *13 (D.N.J. Feb. 23, 2015).

sufficiently allege a violation of a hostile work environment pursuant to Section 1981. If Plaintiff's equal protection claim in Count II is based on a theory other than hostile work environment, then Plaintiff will have to plausibly plead it in an amended complaint. The present Complaint, however, fails to put Defendants on notice of the precise nature of Plaintiff's equal protection claim. Thus, the equal protection claims raised in Counts II and III are dismissed.

The due process claims contained in these counts likewise fail. The Fourteenth Amendment's Due Process Clause has both a procedural and a substantive component. *Nicholas v. Penn. State Univ.*, 227 F.3d 133, 138–39 (3d Cir. 2000). Procedural due process requires the government to follow fair procedures before depriving a person of a protected property interest. *DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell*, 53 F.3d 592, 597 (3d Cir. 1995), *abrogated on other grounds*, *United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa.*, 316 F.3d 392 (3d Cir. 2003). For a substantive due process claim challenging the validity of non-legislative state action, a plaintiff must first establish that he has a protected, fundamental property interest. *Nicholas*, 227 F.3d at 139–42. Thus, to state a claim for either procedural or substantive due process, a plaintiff must allege a protectable interest encompassed by the Fourteenth Amendment. *See Nicholas*, 227 F.3d at 139–40 (substantive due process); *Houston v. Twp. of Randolph*, 934 F. Supp. 2d 711, 733 (D.N.J. 2013) (procedural due process).

Although not clear from his Complaint, Plaintiff contends in his brief that the harm to his reputation resulting from the Report, plus the Report's content, violates his right to due process. Pl. Opp'n at 20. Additionally, Plaintiff alleges that he has a property interest in "employment free from intentionally or willfully indifferent publication from racially discriminatory and defamatory material." *Id.* at 21.

"[R]eputation *alone* is not an interest protected by the Due Process Clause." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006). Instead, a plaintiff must show "a stigma to his reputation *plus* deprivation of some additional right or interest." *Id.* (hereinafter the "stigma-plus test"). Generally, courts have found that nothing short of a plaintiff losing his job can qualify as the "plus" factor. *See, e.g.*, *Edwards v. Cal. Univ. of Pa.*, 156 F.3d 488, 492 (3d Cir. 1998) (plaintiff suspended with pay, but not fired, did not rise to the level of a due process claim); *Kelly v. Borough of Sayreville, N.J.*, 107 F.3d 1073, 1077–1078 (3d Cir. 1997) (plaintiff, who was reprimanded and disciplined, but was never suspended, removed, fined or reduced in rank did not "suffer[] a deprivation beyond the injury to his reputation"). Here, there is no indication that Plaintiff suffered *any* employment repercussions regarding the Report (apart from the claimed injury to his reputation). It appears that Plaintiff remained an employee of Jersey City at the time of filing this action. *See* Compl. ¶ 6 ("Plaintiff . . . is employed with the City of Jersey City."). Plaintiff has not alleged that any adverse employment action has been taken against him, much less his termination. Thus, Plaintiff does not plausibly plead a violation of the stigma-plus test, and his procedural due process claims are dismissed without prejudice.

The standard to plead a claim for substantive due process is even higher, and requires plaintiff to plead a "constitutionally fundamental" interest. *Nicholas*, 227 F.3d at 140. In other words, "[n]ot all property interests entitled to *procedural* due process protection are entitled to *substantive* due process protection." *Whittaker v. Cty. of Lawrence*, 674 F. Supp. 2d 668, 699 (W.D. Pa. 2009), *aff'd*, 437 F. App'x 105 (3d Cir. 2011). Since the Court finds Plaintiff's stated interests insufficient under a procedural due process inquiry, they necessarily fail under the more

demanding substantive due process inquiry. Therefore, Plaintiff's substantive due process claims in Counts II and III are dismissed without prejudice.[13]

## NJCRA (Count V)

Count V is brought pursuant to the NJCRA, alleging that Plaintiff was deprived of "substantive due process and other privileges and immunities secured by the Constitution of the State of New Jersey." Compl. ¶ 104. Again, Plaintiff contends that the discriminatory Report is the basis for his claim. *Id.* ¶¶ 103-109. Defendants argue that since the NJCRA is interpreted analogously to Section 1983, this claim should be dismissed for the same reasons discussed under the analysis of the 1983 substantive due process count.[14] Def. Br. at 17-19.

The Court agrees. The NJCRA is interpreted analogously to Section 1983. *See Coles v. Carlini*, 162 F. Supp. 3d 380, 404 (D.N.J. 2015) ("[C]ourts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart: Section 1983."). Since Plaintiff's substantive due process claim fails under Section 1983, it necessarily fails under the NJCRA.[15] Therefore, Count V is dismissed without prejudice as to all Defendants.

---

[13] Because the Court is dismissing Counts II and III on these grounds, it does not reach Defendants' argument that the Individual Defendants are entitled to qualified immunity.

[14] The Court notes, that while not necessary to determine this motion, Defendants' argument that their actions do not "shock the conscience" is also persuasive. Def. R.Br. at 7. Defendants' actions were not "shocking" to the extent they responded reasonably with a diligent investigation in response to the Report. This investigative response does not meet the standard for a due process claim.

[15] The NJCRA does not provide a means to recover based on a violation of procedural due process. *See Tumpson v. Farina*, 218 N.J. 450, 477 (2014) ("Section 1983 provides remedies for the deprivation of both procedural and substantive rights while [the NJCRA] provides remedies only for the violation of substantive rights."). Also, while Plaintiff's Complaint does not explicitly bring an equal protection claim pursuant to the NJCRA, the United States and New Jersey Constitutions have extremely similar prohibitions on racial discrimination. *See Major Tours, Inc. v. Colorel*, 720 F. Supp. 2d 587, 604 (D.N.J. 2010).

<u>Conspiracy (Counts IV & VIII)</u>

Plaintiff brings two counts of conspiracy against Defendants – Count IV pursuant to Sections 1985 and 1986, and Count VIII – Civil Conspiracy.[16] To sufficiently plead a Section 1985(3) claim, a plaintiff must establish:

> (1) a conspiracy; (2) for the purpose of depriving a person or class of persons equal protection under the law or equal privileges and immunities under the law; (3) an act in furtherance of the conspiracy; and (4) injury to a plaintiff's property or his person, or deprivation of a right or privilege of a U.S. citizen.

*McArdle v. Hufnagel*, 588 F. App'x 118, 120 (3d Cir. 2014). Section 1985(3) actions are limited to conspiracies predicated on "racial, or perhaps otherwise class based, invidiously discriminatory animus." *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997); *Falat v. Cty. of Hunterdon*, No. 12-6804, 2014 WL 6611493, at \*13 (D.N.J. Nov. 21, 2014) ("The conspiracy must be directed at the plaintiff because he belongs to a given class."). In addition, a claim for conspiracy "must contain supportive factual allegations." *Ivan v. Cty. of Middlesex*, 595 F. Supp. 2d 425, 484 (D.N.J. 2009). "The factual allegations supporting the conspiracy claim may not be generalized or conclusory." *Id.*; *see also Schlichten v. Cty. of Northampton*, 279 F. App'x 176, 179 (3d Cir. 2008) (requiring a conspiracy to be pled with specificity). Thus, mere conclusory allegations that a conspiracy exists

---

[16] It is unclear whether Plaintiff's allegations in Count VIII are brought pursuant to Section 1983 or common law conspiracy. *See* Compl. ¶ 140(a) (alleging a violation of Plaintiff's rights "as secured by the United States Constitution, New Jersey State Statutes and Common [L]aw"). If brought pursuant to Section 1983, the same analysis applies to a conspiracy under Section 1983 and Section 1985(3). *See Scheib v. Butcher*, 602 F. App'x 67, 68 (3d Cir. 2015). If brought pursuant to common law conspiracy, there are "similar requirements." *Major Tours, Inc.*, 720 F. Supp. 2d at 610; *see also Galicki v. New Jersey*, No. 14-169, 2015 WL 3970297, at \*9 (D.N.J. June 29, 2015) (requiring a complaint alleging New Jersey common law conspiracy to include "the who, what, when, where, and how of the conspiracy"). Thus, the Court's analysis in this section applies to Counts IV and VIII.

will not survive a motion to dismiss. *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 605 (D.N.J. 2002). Instead, "a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." *Ivan*, 595 F. Supp. 2d at 484.

Additionally, "[a] plaintiff must establish a valid § 1985 claim in order to state a claim under § 1986." *Carrington v. City of Jersey City*, No. 06-5367, 2008 WL 2061147, at *7 (D.N.J. May 12, 2008); *see also Muhammad v. Dempsey*, 531 F. App'x 216, 219 n.4 (3d Cir. 2013) (finding that since plaintiff's Section 1985 claim fell short, his Section 1986 claim necessarily failed as well since "liability under [Section 1986] is predicated on actual knowledge of § 1985 violation").

Here, Plaintiff fails to support his conspiracy claim with sufficient factual allegations. Plaintiff merely pleads that "Defendants conspired against Plaintiff [] and violated his constitutional rights by collaborating to disseminate, investigate, cover up, release and public defamatory and racially discriminatory Crash Review Evaluation Report." Compl. ¶¶ 92, 96, 138. In short, Plaintiff alleges the conspiracy in a wholly conclusory fashion. Plaintiff does not address the necessary elements with sufficient factual particularity. He does not address "the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose," as required by Section 1985. *Ivan*, 595 F. Supp. 2d at 484. Therefore, Plaintiff's conspiracy claims in Counts IV & VIII are dismissed without prejudice.

Defamation (Count VII)

Count VII is a claim for Common Law Defamation. Compl. ¶¶ 128-136. It alleges that Defendants "had knowledge that the content of the Crash Review Evaluation report [] was false and caused that report to be published with reckless disregard of its truth or falsity." *Id.* ¶ 130. Plaintiff further alleges that the Report "amount[s] to defamation and libel *per se.*" *Id.* ¶ 136.

Defendants argue for dismissal of this claim for numerous reasons. First, because Plaintiff did not file a timely notice of tort claim as required by the New Jersey Tort Claims Act ("NJTCA"). Def. Br. at 33-34. Second, Defendants argue that they are entitled to a qualified privilege defense. *Id.* at 34-36. And third, Defendants assert that Plaintiff fails to state a *prima facie* claim of defamation. *Id.* at 36-39.

Since the Court finds Defendants' third argument dispositive, it will not address the first two. Defamation requires a plaintiff to allege that the defendant "(1) made a false and defamatory statement concerning the plaintiff, (2) communicated the statement to a third party, and (3) had a sufficient degree of fault." *Mangan v. Corp. Synergies Grp., Inc.*, 834 F. Supp. 2d 199, 204 (D.N.J. 2011) (citing *Singer v. Beach Trading Co.*, 379 N.J. Super. 63, 80 (App. Div. 2005)). Under New Jersey law, "whether a statement is defamatory depends on 'its content, verifiability, and context.'" *Id.* at 204-05 (quoting *Lynch v. N.J. Educ. Assoc.,* 161 N.J. 152, 167 (1999)).

Here, Plaintiff fails to meet the first element. The Report uses a loathsome racial slur in describing Plaintiff, but a slur is not the same as defamation. *Sims-Felton v. Hegedus*, No. 11-4923, 2013 WL 1844512, at *4 (D.N.J. Apr. 30, 2013) ("[E]ven though plaintiff's allegation that defendants used racial epithets is reprehensible, name-calling does not constitute actionable defamation."). Although such statements are morally repugnant, courts have found them non-actionable as defamation. *See Taylor v. Metzger*, 152 N.J. 490, 526 (1998) ("Recognizing the chilling effect such a holding would cast over a person's freedom of expression, most courts do not find words of bigotry or racism to constitute actionable defamation, thus protecting the freedom to express even unpopular, ugly and hateful, political, religious, and social opinions.") (internal quotation marks omitted).

Thus, as pled, Plaintiff's allegations do not state a claim for defamation. Count VII is dismissed without prejudice.[17]

## VI. CONCLUSION

In sum, the Court **GRANTS** Defendants' motion. Plaintiff's Complaint is dismissed as to all counts without prejudice. Plaintiff has thirty (30) days to file an amended complaint, if he so chooses, consistent with this Opinion and in accordance with Local Civil Rule 15.1.[18] An appropriate Order accompanies this Opinion.

**Date:** June 27, 2017

**JOHN MICHAEL VÁZQUEZ**
**UNITED STATES DISTRICT JUDGE**

---

[17] Defendants also argue that the official capacity claims throughout the Complaint must be dismissed against the Individual Defendants. Def. Br. at 39-40. Defendants reason that suits against government officials in their official capacity are the same as suits against the entity, and therefore are redundant and should be dismissed. *Id.* Plaintiff admits, "an 'official capacity' claim against a local government official is functionally a claim against the local government entity," but argues that "[a]t this early stage of pre-discovery litigation, there is no laudable purpose to dismiss the official capacity claims against the individual defendants." Pl. Opp'n at 39.
    Since the entire Complaint is otherwise dismissed without prejudice, the Court does not reach the official capacity arguments at this time.

[18] Effective May 10, 2017, Local Civil Rule 15.1 states, in part, that:

> A party who files an amended pleading in response to an Order authorizing the filing of that pleading to cure a defect in its pleading shall file:
>
> (1) a copy of the amended pleading, complete with a handwritten or electronic signature; and
>
> (2) a form of the amended pleading that shall indicate in what respect(s) it differs from the pleading that it amends, by bracketing or striking through materials to be deleted and underlining materials to be added.