Not for Publication

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| FLOYD HARLEY,<br><br>*Plaintiff,*<br><br>v.<br><br>CITY OF NEW JERSEY CITY, *et al,*<br><br>*Defendants.* | Civil Action No. 16-5135<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court by way of a motion for reconsideration filed by Plaintiff Floyd Harley of this Court's Opinion and Order entered on June 27, 2017, granting Defendants'[1] motion to dismiss ("MTD Opinion"). *See* D.E. 19, 20. Defendants filed a brief in opposition.[2]

---

[1] Defendants include the City of Jersey City, Jersey City's Department of Public Safety, the Jersey City Police Department, and Jersey City's Office of Equal Opportunity (collectively, the "Entity Defendants"). The individual defendants are Stephen Fulop, James Shea, Terrence Crowley, Jeana Albuan, and Amanda Kahn (the "Individual Defendants," and collectively with the Entity Defendants, "Defendants").

[2] Plaintiff's brief in support of his motion for reconsideration will be referred to hereinafter as "Pl. Br." (D.E. 21); Plaintiff's supplemental brief in support of his motion for reconsideration will be referred to hereinafter as "Pl. Supp. Br." (D.E. 24); Defendants' opposition to Plaintiff's motion will be referred to as "Def. Opp'n" (D.E. 25). Plaintiff also filed a reply brief ("Pl. R.Br."), D.E. 26, and Defendants filed a letter indicating that replies to motions for reconsideration require leave from the Court. D.E. 27. Defendants ask that if the Court accepts the reply, they be permitted to file a sur-reply. *Id.*

Under Local Civil Rule 7.1(d)(3), "[n]o reply papers shall be filed on a motion for reconsideration pursuant to [this rule] ... unless the Court otherwise orders." Plaintiff did not request permission from the Court to file reply papers. Nonetheless, the Court has considered Plaintiff's reply brief in connection with its motion for reconsideration, and because the Court denies that motion for the reasons stated below, there is no need for Defendants to file a sur-reply. Accordingly, Defendants' request for a sur-reply is denied. *See Moore v. Blockbuster, Inc.*, No.

The Court reviewed the submissions made in support and in opposition to the motion, and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Plaintiff's motion is **DENIED**.

## I. BACKGROUND

This case concerns allegations of a deprivation of Plaintiff's constitutional rights, racial discrimination, defamation, and conspiracy in connection with a police report (the "Report"). The Report, as it pertains to Plaintiff, contains a racial slur and comments attributed to Plaintiff that can be considered derogatory.[3]

## II. RECONSIDERATION STANDARD

In the District of New Jersey, Local Civil Rule 7.1(i) governs motions for reconsideration. *Andreyko v. Sunrise Sr. Living*, 993 F. Supp. 2d 475, 477 (D.N.J. 2014). The rule provides that such motions must be made within 14 days of the entry of an order. L. Civ. R. 7.1(i). Substantively, a motion for reconsideration is viable when one of three situations is present: (1) an intervening change in the controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice. *Carmichael v. Everson*, No. 03-4787, 2004 WL 1587894, at *1 (D.N.J. May 21, 2004) (citations omitted). The burden is on the movant to demonstrate that one or more of these three scenarios is present. *Id.*

---

06-6097, 2009 WL 2986417, at *2 (D.N.J. Sept. 17, 2009) (denying defendant's request for a sur-reply to a motion for reconsideration as unnecessary because the court was denying the motion).

[3] The factual and procedural history of this case is set out in full in the MTD Opinion. *See* D.E. 19 at 2-5.

2

A motion for reconsideration is inappropriate when a party merely disagrees with a court's ruling or when a party simply wishes to re-argue or re-hash its original motion. *Sch. Specialty, Inc. v. Ferrentino*, No. 14-4507, 2015 WL 4602995, *2-3 (D.N.J. July 30, 2015); *see also Florham Park Chevron, Inc. v. Chevron U.S.A.*, 680 F. Supp. 159, 162 (D.N.J. 1988). Thus, motions for reconsideration are considered "extremely limited procedural vehicles," and a remedy that is granted "very sparingly." *Andreyko*, 993 F. Supp. 2d at 477.

### III. ANALYSIS

In its MTD Opinion, the Court concluded that Plaintiff failed to plausibly plead any of his alleged causes of action. D.E. 19. Plaintiff seeks reconsideration of the motion to dismiss standard applied by this Court as well as the dismissal of his NJLAD, defamation and Section 1981 causes of action.

Rule 12(b)(6) Standard

Plaintiff argues that the Court applied the wrong standard of review in deciding Defendants' motion to dismiss. Pl. Br. at 3. Specifically, Plaintiff alleges that civil rights complaints are subject to a "more liberal pleading standard" than "*Twombly* ... and its progeny." *Id.* In support of his position, Plaintiff cites to *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993) and *Alston v. Parker*, 363 F.3d 229 (3d Cir. 2004) for support. *Id.* at 4-6.

Defendants respond that Plaintiff relies exclusively on pre-*Iqbal/Twombly*[4] case law. Def. Opp'n at 4. The Court agrees. Prior to the *Iqbal* and *Twombly* decisions, courts applied the notice

---

[4] *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

3

pleading standard derived from *Conley v. Gibson*, 355 U.S. 41 (1957), when deciding a motion to dismiss. In *Conley*, the Supreme Court held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. at 45-46. *Twombly* and *Iqbal*, decided in 2007 and 2009, respectively, altered the pleading standard, replacing *Conley's* "no set of facts" test by holding that a complaint's factual allegations must "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, complaints must now contain sufficient factual allegations to state a facially *plausible* claim for relief. *See id.* at 570; *Iqbal*, 556 U.S. at 678; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (finding that after *Iqbal* and *Twombly*, "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.").

Both *Leatherman* and *Alston* applied the motion to dismiss standard to federal civil rights cases *before Iqbal* and *Twombly* were decided. *See Leatherman*, 507 U.S. at 168 (applying *Conley's* "no set of facts" test to motion to dismiss); *Alston*, 363 F.3d at 223 (same). This standard no longer applies. *See Tyco Fire Prod. LP v. Victaulic Co.*, 777 F. Supp. 2d 893, 898 (E.D. Pa. 2011) (finding that *Twombly* and *Iqbal* "dispens[ed] with *Conley's* 'no set of facts' test"). "*Iqbal* [also] made clear that Rule 8's pleading standard applies with the same level of rigor in '*all*' civil actions.'" *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) (emphasis added) (quoting *Iqbal*, 556 U.S. at 684). In fact, the Third Circuit has specifically applied *Twombly*

and *Iqbal* to civil rights actions. *See Phillips v. Cty of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (applying *Twombly* to Section 1983 claims alleging a violation of plaintiff's constitutional rights).

Thus, *Twombly* and *Iqbal* apply. Plaintiff's motion for reconsideration is denied as to the pleading standard that is required to defeat a Rule 12(b)(6) motion to dismiss.

NJLAD

Next, Plaintiff argues that the Court erred in in its application of New Jersey law in regards to Plaintiff's NJLAD claim. Pl. Br. at 6-7. Plaintiff argues that the Court was incorrect in finding the Report "insufficiently 'severe' or 'pervasive' to show a plausible hostile work environment." *Id.* at 6. Plaintiff stresses that under New Jersey law, a "single utterance may create a hostile work environment. " *Id.* at 9. He also argues that pursuant to the NJLAD, "an employer may be liable for damages resulting from conduct of its employees who violate [the] NJLAD." *Id.* at 8.

Plaintiff does nothing more than re-hash his arguments made and considered by the Court in the MTD Opinion. *See* Generally D.E. 14. It appears that Plaintiff is arguing that there was an error in law, but he does not direct this Court to the exact area of law where the error occurred. Instead, he repeats arguments previously made, apparently hoping to get a "second bite at the apple." *Conway v. A.I. duPont Hosp. for Children*, No. 04-4862, 2009 WL 1492178, at *4 (E.D. Pa. May 26, 2009) ("[M]otions for reconsideration should not give parties a "second bite at the apple.'").

Moreover, in the MTD Opinion, the Court acknowledged that a single incident could be sufficiently severe, stating that "[i]solated incidents *generally* will not suffice to establish a hostile work environment *unless they are extraordinarily severe*." D.E. 19 at 9 (emphases added).

Additionally, the Court addressed aiding and abetting liability under the NJLAD, concluding that Plaintiff did not adequately plead that Defendants aided and abetted any discriminatory conduct. *Id.* at 14. Thus, the Court analyzed the NJLAD claims pursuant to relevant law and found that Plaintiff's claims were not plausibly pled.

Plaintiff's motion for reconsideration as to his NJLAD claim is denied.

Defamation

Plaintiff also argues that this Court erred in its application of New Jersey law in analyzing Plaintiff's defamation claim. Pl. Br. at 10. Plaintiff contends that this Court's reliance on *Sims-Felton v. Hegedus*, No. 11-4923, 2013 WL 1844512, at *4 (D.N.J. Apr. 30, 2013) is "misguided, because, in that case defendant verbalized a racial slur while at work," and in this action, the slur was written down in the Report. *Id.* at 10. First, the Court's "reliance" on *Sims-Felton* is overstated. The Court referred to *Sims-Felton* for the sole proposition that "name-calling does not constitute actionable defamation." D.E. 19 at 25. It also supplemented this statement with case law from the Supreme Court of New Jersey, supporting the more important conclusion that words of "bigotry or racism [do not] constitute actionable defamation." *See id.* at 25 (quoting *Taylor v. Metzger*, 152 N.J. 490, 526 (1998)). Second, while Plaintiff attempts to distinguish a verbal slur from a written one, he does not explain why this distinction would make any difference in the Court's analyses. The Court does not see a substantive difference.

Plaintiff also cites to the same elements constituting defamation as this Court applied in its MTD Opinion. *Compare* Pl. Br. at 10 *with* D.E. 19 at 25. Thus, Plaintiff is again merely disagreeing with the MTD Opinion and asking this Court to revisit its decision, an inappropriate

6

inquiry for a motion for reconsideration. *See United States v. Compaction Sys. Corp.*, 88 F. Supp. 2d 339, 345 (D.N.J. 1999) ("Mere disagreement with a court's decision normally should be raised through the appellate process and is inappropriate on a motion for [reconsideration]"). Plaintiff's motion for reconsideration of the MTD Opinion on Plaintiff's defamation claim is denied.

Section 1981 Hostile Work Environment

Lastly, Plaintiff supplements its briefing with the recent Third Circuit case, *Castleberry v. STI Group*, 863 F.3d 259 (3d Cir. 2017). *See* Pl. Supp. Br. In *Castleberry*, two African-American laborers alleged numerous instances of harassment and discrimination against their employer. *Id.* at 262. First, the plaintiffs alleged that when they arrived at work on several occasions, someone had written "don't be black on the right of way" on the sign-in sheets. *Id.* They also alleged that, although they were more experienced than their non-African-American co-workers, they were only permitted to do menial tasks by comparison. *Id.* Lastly, the plaintiffs alleged that, while working on a fencing project, a supervisor told them that if they "n-rigged" the fence, then "they would be fired." *Id.* Subsequently, plaintiffs reported these incidents and were fired two weeks later "without explanation." *Id.*

In its analysis, the Third Circuit clarified that the correct inquiry in determining whether a hostile work environment exists is whether the employer's conduct was sufficiently "severe *or* pervasive" as opposed to severe *and* pervasive. *Id.* at 264 (emphasis added). Noting inconsistencies in prior Third Circuit Opinions, the *Castleberry* court determined that "severe or pervasive" is the appropriate standard for a hostile work environment claim. *Id.* The court then looked at whether the use of the "N-word" was adequately severe to meet that standard. *Id.* at 264-

7

65. In its analysis, the court noted that the "resolution of th[is] question is context-specific," but it is clear that "one isolated instance *can* suffice to state a claim." *Id.* at 264 (emphasis added). The *Castleberry* court concluded that the incident was sufficiently severe to create a hostile work environment, stressing that the racial slur occurred in front of coworkers and was "accompanied by threats of termination (which ultimately occurred)." *Id.* at 265.[5]

While the MTD Opinion used the standard "severe and pervasive," it nonetheless acknowledged that a single severe incident could meet that standard. *See* D.E. 19 at 9 ("Isolated incidents *generally* will not suffice to establish a hostile work environment *unless they are extraordinarily severe*.") (emphasis added). However, this Court concluded that the single incident in this case, found in the Report, was insufficiently severe to plausibly plead a hostile work environment. *Id.* at 10. The Report was not so severe as to "alter the conditions of [Plaintiff's] employment …" *Id.* at 10 (citing *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993)). The Court stressed that Plaintiff, according to his Complaint, was not aware of the Report until nearly six years after it was written and that there were no allegations that Plaintiff suffered a hostile work environment in the intervening time period. *Id.* at 11. There were also no allegations of hostility

---

[5] The Third Circuit also found that the allegations could establish that the conduct was "pervasive." *Id.* at 265-66. Specifically, the Third Circuit pointed to the numerous instances of racially discriminatory comments on the sign-in sheet and the menial tasks the plaintiffs alleged they were required to perform while their non-African-American colleagues obtained more substantive work. *Id.* at 266. The court ultimately concluded that "[w]hether these allegations are true and whether they amount to 'pervasiveness' are questions to be answered after discovery." *Id.* Nonetheless, because the incident with the "N-word" was sufficiently severe, the court found that plaintiffs adequately pled a claim of a hostile work environment. *Id.*

*following* Plaintiff's discovery of the Report. *Id.* Therefore, this Court found that Plaintiff failed to plausibly plead a claim of a hostile work environment. *Id.*

The Court would reach the same conclusion under the *Castleberry* standard as it did in its MTD Opinion. While Plaintiff argues that the current matter consists of more severe facts than those of *Castleberry*, the Court disagrees. In *Castleberry*, the Third Circuit stressed that the "N-word" was used in person, in front of co-workers, and accompanied by threats of termination which ultimately occurred. 863 F.3d at 265. Here, on the other hand, the Report was written six years prior to the Plaintiff having any knowledge of it. Not only did Plaintiff maintain his job after the Report, he does not allege that his work environment changed after the Report was written or following his discovery of the Report. Plaintiff appears to argue that *Castleberry* determined that the use of the "N-word" is sufficiently egregious to meet the hostile work environment standard in every case. Pl. R.Br. at 3. However, *Castleberry* explicitly stated that the "resolution of th[is] question is context-specific." *Id.* at 264. Therefore, looking at the circumstances of this case as alleged in Plaintiff's Complaint, the incident was not sufficiently severe "'to amount to a change in the terms and conditions of employment' for it to serve as the basis of a harassment claim." *Castleberry*, 863 F.3d at 264 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1988)).[6]

---

[6] As Defendants point out, this was not the only basis for dismissal of Plaintiff's Section 1981 hostile work environment claim. The Court also held that Section 1981 does not create a private cause of action and that Plaintiff appeared to allege that the publication of the report was done by a private citizen, rather than any of the Defendants. D.E. 19 at 7, 11.

9

While *Castleberry* reflects a "change in the controlling law" vis-à-vis the severe or pervasive standard,[7] it does not affect the outcome of the MTD Opinion. Thus, Plaintiff's motion for reconsideration is denied.

## IV. CONCLUSION

For the foregoing reasons and for good cause shown, Plaintiff's motion for reconsideration (D.E. 21) is **DENIED**. An appropriate form of Order accompanies this Opinion.

Dated: August 23, 2017

                                                          */s/ Joe Vazquez*
                                          John Michael Vazquez, U.S.D.J.

---

[7] Of note, in the MTD Opinion, the Court did quote directly from two cases, using the disjunctive ("or") rather than the conjunctive ("and") as to requirements of severe and pervasive. *See* D.E. 19 at 9 ("In other words, 'to be actionable, the harassment must be so severe *or* pervasive that it alters the conditions of the victim's employment and creates an abusive environment.'" (quoting *Grassmyer v. Shred-It USA, Inc.*, 392 F. App'x 18, 30 (3d Cir. 2010))); *id.* ("'The *sine qua non* of a hostile work environment claim is a workplace ... permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe *or* pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" (quoting *Fitzgerald v. Shore Mem'l Hosp.*, 92 F. Supp. 3d 214, 240 (D.N.J. 2015) (emphases added))).